EAG:NR

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

SUSAN PEMBERTON,

             Defendant.

- - - - - - - - - - - - - - - -X
EASTERN DISTRICT OF NEW YORK, SS:

**M 11-1128**

AFFIDAVIT
~~C O M P L A I N T~~

(18 U.S.C. §§ 287 and 2)

       KAREN FLANAGAN, being duly sworn, deposes and states
that she is a Special Agent of the United States Internal Revenue
Service ("IRS") duly appointed according to law and acting as
such.

       Upon information and belief, in or about and between
2008 and 2011, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendant
SUSAN PEMBERTON did knowingly and intentionally make and present
one or more claims upon and against an agency of the United
States, to wit: the IRS, which claims the defendant knew to be
materially false, fictitious and fraudulent, in that the
defendant filed and caused U.S. Individual Income Tax Returns,
Forms 1040, for the tax years 2007 through 2010, on behalf of
Jane Doe, John Doe and the Taxpayers (as defined below),
individuals whose identities are known to the affiant, each of
which claimed refunds of taxes, when, as the defendant SUSAN

PEMBERTON well knew and believed, each of the Forms 1040
contained false, fictitious and fraudulent information and claims
for tax refunds.

(Title 18, United States Code, Sections 2 and 287).

The source of your deponent's information and the
grounds for her belief are as follows:[1]

1.   IRS agents have identified 238 federal income tax
returns, electronically filed between in or about 2008 and 2011,
in different names including Jane Doe, John Doe and the Taxpayers
(as defined below) which listed the address of the taxpayers as
"14 Bond Street, Apartment 259 in Great Neck, NY" (herein after
"14 Bond Street, Apt. 259").[2]  These 238 tax returns requested
refunds in excess of $545,637.00.

2.   When the 238 tax returns were filed with the IRS, a
W-2 form was filed along with each return. IRS employees reviewed
the majority of the 238 returns.  This review revealed that the
W-2 forms provided with the reviewed returns were inconsistent
with W-2 forms provided to the IRS by the identified employers.
Specifically, the W-2 forms provided by the employers reflect
that the taxpayers associated with the reviewed returns were not,
in fact, employed by the employers identified in those returns.

_____

[1]      Because the purpose of this Complaint is to set forth
only those facts necessary to establish probable cause, I have
not described all the relevant facts and circumstances of which I
am aware.

[2]      In certain instances, the apartment number "259" was
repeated twice.

3.    An IRS agent visited 14 Bond Street in Great Neck, which is not a residential building, but rather a United Parcel Service ("UPS") retail store (hereinafter the "UPS Store"), which commercially offers private mailboxes for lease.

4.    Employees at the UPS Store informed an IRS agent that between November 27, 2007 and the present, mail box #259, the box to which mail addressed to 14 Bond Street, Apt. 259 would be delivered, was leased in the name of SUSAN PEMBERTON.  UPS records reflect that "Susan Pemberton" is the lone individual authorized to access mail box #259.  Additionally, UPS employees have indicated, in sum and substance and in part, that an individual matching the defendant SUSAN PEMBERTON's description is the only individual they had seen accessing mail box #259.

5.    UPS employees also informed an IRS agent, in sum and substance and in part, that much of the mail sent to mail box #259 appears to be from the IRS.

6.    On or about December 29, 2010, UPS employees informed an IRS agent that two envelopes addressed to individuals other than "Susan Pemberton" from the IRS were in mail box #259. At approximately 11:00 a.m., an IRS agent saw the defendant SUSAN PEMBERTON enter and shortly thereafter leave the UPS Store.  UPS employees subsequently confirmed that the individual who entered and left the store on December 29, 2010 was the individual who frequently accessed mail box #259.

7.    IRS Agents have also obtained records received

from Astoria Federal Savings Bank, a review which shows the following. (a) On or about June 4, 2010, an individual opened a bank account in the name "Susan Pemberton." A surveillance photograph taken on June 4, 2010 at approximately the same time the bank account in the name of "Susan Pemberton" was opened shows an individual closely resembling the defendant SUSAN PEMBERTON at a desk during the account opening. (b) The address associated with the account was 14 Bond St., Apt. 259 in Great Neck, NY. (c) During the period June 4, 2010 through July 22, 2010, twenty-two (22) tax refund checks totaling approximately $27,000.00 were deposited into this account. These checks were drawn on either the U.S. Treasury, H&R Block Bank, or Santa Barbara Bank & Trust. These checks were made payable to twenty-two (22) different individuals. Twenty (20) of these checks contained a payee address of 14 Bond Street, Apt. 259, Great Neck, New York. The funds relating to each check were withdrawn soon after each deposit. (d) A surveillance photograph taken on July 22, 2010 shows an individual closely resembling the defendant SUSAN PEMBERTON making a $2,600.00 withdrawal on July 22, 2010.

8. Employees of the Astoria Federal Savings Bank have advised in sum and substance and in part, that they contacted the defendant SUSAN PEMBERTON regarding the aforementioned activity. The defendant SUSAN PEMBERTON stated, in sum and substance and in part, that she was employed by a company called "RMS" as a tax

preparer, and indicated that RMS was located at 14 Bond Street in Great Neck, New York. She stated further, in sum and substance and in part, that after the tax returns were prepared and filed, checks were sent to RMS and she was told to double endorse the checks and then cash them through her personal account at Astoria Federal Savings Bank. PEMBERTON further said, in sum and substance and in part, that she gave the cash to RMS and the only money she received was a payroll check from RMS. A review of records in publicly available databases reveals that no company named "RMS" exists at that location.

9.    IRS agents have conducted interviews of ten taxpayers (the "Taxpayers") for whom tax returns (the "Tax Returns") listing the Taxpayers' addresses as 14 Bond Street, Apt. 259, were electronically filed between 2008 and July 2011, both dates being approximate and inclusive.

10.   Each of the Taxpayers, including Jane Doe, stated in sum and substance and in part, the following: (a) she had never lived at 14 Bond Street or worked for any of the employers identified in the W-2 forms attached to the Tax Returns; (b) she or she had not received any refunds relating to the Tax Returns; (c) she had never met the defendant SUSAN PEMBERTON or authorized the defendant SUSAN PEMBERTON to prepare her tax return.

11.   IRS agents also communicated with the landlord (the "Landlord") of a residence at 40 Avenue B in Port Washington, New York ("Avenue B Residence"). The Landlord of the

Avenue B Residence identified the defendant SUSAN PEMBERTON as his former tenant. The Landlord provided IRS agents a lease reflecting that the defendant SUSAN PEMBERTON commenced her tenancy at the Avenue B Residence on April 1, 2010. The Landlord indicated that PEMBERTON and her two daughters were the only residents of the Avenue B Residence during the period of her tenancy. The Landlord indicated that PEMBERTON had moved out of the premises on or about April 2, 2011.

12. The Landlord provided IRS agents with a number of items abandoned by PEMBERTON upon moving out of the Avenue B Residence, including: (a) prepaid debit cards and/or related paperwork in the name of approximately 15 individuals, including Jane Doe; (b) checkbooks and checks relating to bank accounts in the names of two individuals, including Jane Doe; (c) a Cablevision bill in the name of Jane Doe; (d) letters from the IRS to three individuals; and (e) papers containing the handwritten names and/or social security numbers of 13 individuals.

13. During the IRS agent's interview of Jane Doe, whose name appeared on the checkbook and checks, Cablevision bill and prepaid debit card abandoned at the Avenue B Residence, Jane Doe indicated, in sum and substance and in part, that Jane Doe did not know the defendant SUSAN PEMBERTON, had never lived in or visited New York and was unaware that the bank accounts, Cablevision bill or prepaid debt card were in her name.

14.   IRS agents also obtained records from Cablevision which showed that an internet account in the name of "John Doe" was established at the Avenue B Residence on April 20, 2010 and was active through at least April 8, 2011 and that there were four Internet Protocol addresses (the "IP addresses") associated with this account during that period.   The records further revealed that the defendant SUSAN PEMBERTON made at least two payments, by check, relative to this internet account.

15.   IRS records reflect that approximately 100 tax returns were electronically filed from these IP addresses between April 2010 and March 2011.   These 100 tax returns appear to be fraudulent as the W-2 forms filed with these tax returns do not match the W-2 forms provided to the IRS by the employers identified in the tax returns.

16.   IRS records reflect that a tax return which appears to be fraudulent was filed in the name of "John Doe," with an "u " replacing an "o" in the spelling of John Doe's last name.   The address for this tax return was listed as 14 Bond Street.

*a warrant issue for the arrest of the*

WHEREFORE, your deponent respectfully requests that

defendant SUSAN PEMBERTON ~~be dealt with according to law~~.

KAREN FLANAGAN
Special Agent
Internal Revenue Service

Sworn to before me this
15th day of November, 2011


THE HONORABLE MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK